## COLORADO *v.* UNITED STATES ET AL.

· No. 195.   Argued March 5, 8, 1926.—Decided May 3, 1926.

1. Under § 1, pars. 18–20, of the Interstate Commerce Act, as amended by Transportation Act, 1920, § 402, the Interstate Commerce Commission has power to authorize abandonment, as respects both intrastate and interstate traffic, of a branch line of railroad, lying wholly within the State of the owning company's incorporation, upon the ground that local conditions are such that public convenience and necessity do not require continued operation, and that such operation will result in large deficits constituting an undue burden upon interstate commerce.   P. 161.

2. The exercise of federal power in' authorizing such abandonment is not an invasion of the field reserved by the Constitution to the State, for the paramount power of Congress over interstate commerce enables it to determine to what extent and in what manner intrastate service must be subordinated in order that interstate service may be adequately rendered.   P. 165.

3. In a suit to enjoin an order of the Interstate Commerce Commission, the court may consider the objections that essential findings were not made and that findings made were not supported by evidence, if all the evidence before the Commission was introduced in the court below and is substantially incorporated in the record on appeal.   P. 166.

4. While the constitutional basis of authority to issue the certificate of abandonment is the power of Congress to regulate interstate commerce, the Act does not make issuance of the certificate conditional upon a finding that continued operation will result in discrimination against interstate commerce, or that it will result in a denial of just compensation for the use in intrastate commerce of the property of the carrier within the State, or that it will result in a denial of such compensation for the property within the State used in commerce intrastate and interstate.   P. 167.

5. The sole test prescribed by the Act is that abandonment be consistent with public necessity and convenience; in determining this the Commission must have regard for the needs of both intrastate and interstate commerce.   P. 168.

Affirmed.

APPEAL from a decree of the District Court which dismissed the bill brought by the State of Colorado, against the United States, the Interstate Commerce Commission, and the Colorado & Southern Railway Company, seeking to enjoin and in part set aside an order of the Commission,—a certificate permitting the Railway to abandon a branch line in Colorado.

*Mr. Barney L. Whatley,* with whom *Messrs. William L. Boatright,* Attorney General of Colorado, and *S. E. Naugle,* Assistant Attorney General, were on the brief, for appellant.

It is the duty of a railroad company doing business as a common carrier to provide reasonably adequate facilities for serving the public, and the State has the power to compel it to do so as long as the powers and privileges granted to the carrier by the State are retained and enjoyed. *C. & O. Ry. Co.* v. *Public Service Comm.,* 242 U. S. 603; *A. C. L. R. R. Co.* v. *North Carolina Corp. Comm.,* 206 U. S. 1; *Missouri Pac. R. R. Co.* v. *Kansas ex rel. etc.,* 216 U. S. 262; *Ore. R. R. & Nav. Co.* v. *Fairchild,* 224 U. S. 510; *P. & S. Coal Co.* v. *Del. & N. R. Co.,* 289 Fed. 133; *Colo. & Sou. Ry. Co.* v. *Railroad Comm.,* 54 Colo. 54. The State may compel the performance of that duty even though it results in a financial loss to the carrier, unless all of its charter rights and privileges are surrendered. Cases cited, *supra,* and *Brooks-Scanlon & Co.* v. *Railroad Comm.,* 251 U. S. 396; *Railroad Comm. of Texas* v. *Eastern Texas R. R. Co.,* 264 U. S. 79; *Ft. Smith Lt. & Tr. Co.* v. *Bourland,* 267 U. S. 330. Where the State has ordered the carrier to provide a certain service, the question of financial loss is an important circumstance in determining the reasonableness of the order; but in advance of such an order the question of financial loss is not involved.

Neither the Interstate Commerce Act nor Transportation Act, 1920, takes from the State the right to regulate

and control its intrastate commerce; and to the extent that they or either of them may attempt to do so they are unconstitutional. *Texas* v. *Eastern Texas R. R. Co.,* 258 U. S. 204; *Railroad Comm. of Texas* v. *Eastern Texas R. R. Co.,* 264 U. S. 79; *Ft. Smith Lt. & Trac. Co.* v. *Bourland,* 267 U. S. 330. The Interstate Commerce Commission is without power to authorize the abandonment, as respects intrastate business, of a line of railroad wholly within a State, which is owned and operated by a corporation of that State; and at the same time permit the company to retain and enjoy its charter rights and privileges.

This is not a case of discrimination against interstate and foreign commerce, nor of the construction of any new plant or facility, nor of rates; and decisions of this court involving these questions do not change the rule announced in the cases above cited. Where it is shown that a railroad company chartered by a State has for seven years enjoyed an average annual net operating income of practically $2,450,000, and there is no showing or finding as to the value of its properties used and useful in the public service, and no showing that it is not earning and getting a fair return on the present fair value of those properties, an order of the Interstate Commerce Commission authorizing the abandonment, as respects intrastate business, of a portion of one of the company's lines located wholly within that State, is not supported by sufficient evidence or findings, and should be set aside as arbitrary action.

An order of the Interstate Commerce Commission for the total abandonment of a line of railroad wholly within a State, owned and operated by a corporation of that State, made without any evidence concerning, and without giving consideration to, property values, revenues and expenses of the intrastate business of the carrier considered separately from the interstate business, and without a finding concerning such matters, is not supported

by proper evidence or findings and should be set aside. *B. & O. R. R. Co.* v. *United States*, 264 U. S. 258; *Simpson* v. *Shepard*, 230 U. S. 352; *St. Louis & S. F. R. R. Co.* v. *Gill*, 156 U. S. 649; *Cumberland Tel. & Tel. Co.* v. *Pub. Ser. Comm.*, 283 Fed. 215. Such an order based solely on the past operating results of the particular line when the company was engaged in both interstate and intrastate business and under schedules of operation voluntarily inaugurated and maintained by it, and where there is no showing or finding as to how many trains will be required in the future for the service and accommodation of purely intrastate business nor of the financial results of operating such train or trains, is not supported by sufficient evidence or findings, and should be set aside. An order of the Interstate Commerce Commission based, in part, upon the fact that the railroad corporation offered to lease its line for a nominal rental to those who protested its abandonment, should be set aside as arbitrary and unwarranted.

*Messrs. Blackburn Esterline,* Assistant to the Solicitor General, and *R. Granville Curry,* with whom *Solicitor General Mitchell* and *Mr. P. J. Farrell* were on the briefs, for the United States and the Interstate Commerce Commission.

The staggering deficits in the operation of the Buena Vista-Romley branch constitute such a drain on an artery of interstate commerce as to call for the issuance of the certificate. *Texas* v. *Eastern Tex. R. R.,* 258 U. S. 204; *R. R. Comm.* v. *Eastern Tex. R. R.,* 264 U. S. 79. In *Texas* v. *Eastern Tex. R. R., supra,* this Court said of the Eastern Texas Railroad, (thus clearly distinguishing it from the case at bar,): " It is not as if the road were a branch or extension whose unremunerative operation would or might burden or cripple the main line and thereby affect its utility or service as an artery of inter-

state and foreign commerce." These words precisely describe the situation in the present case and the Commission acted accordingly.

The fact that commerce both interstate and intrastate may move over the branch does not invalidate the certificate. *United States, v. Village of Hubbard,* 266 U. S. 474; *Railroad Commission of Wisconsin* v. *C. B. & Q. R. R.,* 257 U. S. 563; *New York* v. *United States,* 257 U. S. 591; *Shreveport Case,* 234 U. S. 342; *American Express Co.* v. *Caldwell,* 244 U. S. 617; *United States* v. *Tennessee,* 262 U. S. 318.

The contract claimed between the State and Colorado & Southern may not prevail against the paramount power of Congress through the Commission to regulate interstate and foreign commerce. *State of New York* v. *United States,* 257 U. S. 591; *United States* v. *Village of Hubbard,* 266 U. S. 474.

*Mr. Bruce Scott,* with whom *Messrs. Kenneth F. Burgess, J. Q. Dier,* and *J. H. Barwise, Jr.* were on the brief, for The Colorado & Southern Railway Company.

Appellee railway company contends that the certificate and order of the Interstate Commerce Commission authorizing this abandonment were clearly within its statutory authority, Interstate Commerce Act, § 1, par. 18–20, 41 Stat. 477; that this statutory authority to the Commission authorizing abandonment was part of a comprehensive scheme of railroad regulation wherein Congress sought to provide an adequate system of interstate transportation, *R. R. Comm. of Wisconsin* v. *C. B. & Q. R. R. Co.,* 257 U. S. 563; *New England Divisions Case,* 261 U. S. 184; *Dayton-Goose Creek Ry. Co.* v. *United States,* 263 U. S. 456; *R. R. Comm. of Calif.* v. *Southern Pacific,* 264 U. S. 331; *D. & M. Ry. Co.* v. *Boyne City G. & A. R. Co.,* 286 Fed. 540; that the constitutionality of the Transportation Act, 1920, has been repeatedly upheld

by this Court, *R. R. Comm. of Wisconsin* v. *C. B. & Q. R. R. Co.*, 257 U. S. 563; *New York* v. *United States*, 257 U. S. 591; *Texas* v. *Eastern Texas R. R. Co.*, 258 U. S. 204; *Texas* v. *Interstate Commerce Comm.*, 258 U. S. 158; *Dayton-Goose Creek Ry. Co.* v. *United States*, 263 U. S. 456; *R. R. Comm. of Calif.* v. *Southern Pacific*, 264 U. S. 331; *United States* v. *Abilene & Southern Ry. Co.*, 265 U. S. 274; that the courts will not review determinations of the Interstate Commerce Commission made within the scope of its power, or substitute their judgment for its findings, *United States* v. *New River Co.*, 265 U. S. 533; *Illinois Central* v. *Int. Comm. Comm.*, 215 U. S. 452; *Interstate Commerce Comm.* v. *Union Pacific Co.*, 222 U. S. 541; *Kansas City Sou. Ry. Co.* v. *United States*, 231 U. S. 423; *United States* v. *L. & N. Ry. Co.*, 235 U. S. 314; *Manufacturers Ry. Co.* v. *United States*, 246 U. S. 457; *Seaboard Air Line Ry. Co.* v. *United States*, 254 U. S. 57; *New England Divisions Case*, 261 U. S. 184; that the final order of the Interstate Commerce Commission was entered after full hearing and argument, rehearing and reargument, upon consideration of the evidence of record, 72 I. C. C. 315; 82 I. C. C. 310; 86 I. C. C. 393; that the Commission made an administrative finding of the existence of an undue burden upon interstate commerce through the operation of this branch, which finding was based upon substantial evidence, 86 I. C. C. 393; that similar burdens have been frequently enjoined by the courts both prior and subsequent to the Transportation Act of 1920, as undue interference with interstate commerce, *C. B. & Q. R. R. Co.* v. *R. R. Comm. of Wis.*, 237 U. S. 220; *Mississippi R. R. Comm.* v. *Illinois Cent. R. R. Co.*, 203 U. S. 335; *Atlantic Coast Line* v. *Wharton*, 207 U. S. 328; *Herndon* v. *C. R. I. & P. Ry. Co.*, 218 U. S. 135; *Roach* v. *A. T. & S. F. Ry. Co.*, 218 U. S. 159; *Davis, Director Gen.* v. *Farmers Cooperative Co.*, 262 U. S. 312; *A. T. & S. F. Ry. Co.* v. *Wells*, 265 U. S. 101.

The facts in this case differentiate it from the *Eastern Texas Case,* 258 U. S. 204, appellee being an artery of interstate commerce in several States, the utility of which would be burdened by operation of this branch line. The other points relied upon by appellant have already been ruled upon by this Court adversely to appellant's contention; (a) contract or charter obligation of a carrier yields to the power of Congress to regulate interstate commerce and to administrative orders of the Interstate Commerce Commission entered thereunder, *L. & N. R. R. Co. v. Mottley,* 219 U. S. 467; *New York* v. *United States,* 257 U. S. 591; *P. B. & W. R. R. Co.* v. *Schubert,* 224 U. S. 603; (b) no duty rested on the Interstate Commerce Commission under the law to separate property values and revenue and expenses as between intrastate and interstate operations.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit was brought by Colorado against the United States, in the federal court for that State, to enjoin and set aside, in part, an order of the Interstate Commerce Commission issued February 11, 1924. The order is a certificate that present and future public convenience and necessity permit the abandonment by the Colorado & Southern Railway Company, six months thereafter, of a branch line located wholly in that State. The certificate was issued under Interstate Commerce Act, § 1, pars. 18–20, as amended by Transportation Act, 1920, c. 91, § 402, 41 Stat. 456, 477.

The Company is a Colorado corporation. It owns and operates in intrastate and interstate commerce a railroad system located partly in Colorado and partly in other States. The branch was constructed under the authority of Colorado and was acquired by the Company under its authority. The line is narrow gauge. It is now physi-

cally detached from other lines of the Company; but it is operated in both intrastate and interstate commerce as a part of the system by means of connections with other railroads. The certificate was granted on the ground that the local conditions are such that public convenience and necessity do not require continued operation; that for years operation of the branch had resulted in large deficits; that future operation would likewise result in large deficits; that the operating results of the branch are reflected in the Company's accounts; that it would have to make good the deficits incurred in operating the branch; and that thus continued operation would constitute an undue burden upon interstate commerce. *Abandonment of Branch Line by Colorado & Southern Ry.,* 72 I. C. C. 315; 82 I. C. C. 310; 86 I. C. C. 393.

The application for the certificate was filed September 1, 1921. Before any hearing thereon, the State moved that the proceeding be dismissed on the ground, among others, that, as the branch was wholly intrastate, the Commission was without jurisdiction of the application. This objection was overruled. Thereafter, the State opposed, on the merits, the granting of the certificate. The case was first heard before Division 4 of the Commission on exceptions filed by the Company to the examiner's proposed report. On July 28, 1922, the application was denied, with leave to renew it " if the improvement in operating results, confidently anticipated by protestants, should not materialize." 72 I. C. C. 315. On May 19, 1923, the Company filed a petition praying that the case be reopened and set for further hearing. Division 4 heard it. On September 24, 1923, an order was entered that the certificate issue. 82 I. C. C. 310. A hearing before the full Commission was then sought by the State and the other protestants. Compare *United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274, 281. The

request was granted. On February 11, 1924, the order was affirmed with the modification that the certificate should not take effect until six months from that date. 86 I. C. C. 393. The effective date of the certificate was later extended to September 11, 1924; and finally to October 11, 1924. 94 I. C. C. 657, 661.

Meanwhile, this suit had been begun. The Commission and the Company intervened as defendants. On August 19, 1924, a decree dismissing the bill on the merits was entered, upon final hearing, without opinion. A motion for a suspension of the order of the Commission pending an appeal was denied. The case is here on direct appeal under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220. The order is assailed as void insofar as it authorizes abandonment and discontinuance of operation in intrastate traffic. The remedy pursued is the appropriate one. See *Texas* v. *Eastern Texas R. R. Co.,* 258 U. S. 204.

*First.* The main contention of the State is that the Commission lacks power to authorize the Company to abandon, as respects intrastate traffic, a part of its line lying wholly within the State. The argument is this. While a railroad cannot, in the absence of express statutory provision or contract, be compelled by a State to continue operating its lines at a loss when there is no reasonable prospect of future profit, and may, therefore, without such consent, abandon all lines within the State, *Brooks-Scanlon Co.* v. *Railroad Commission,* 251 U. S. 396; *Bullock* v. *Florida,* 254 U. S. 513, 520; *Railroad Commission* v. *Eastern Texas R. R. Co.,* 264 U. S. 79, 85; it has no right to abandon a part of the lines, merely because operation will be attended by pecuniary loss, and still continue to enjoy the privilege of operating other parts within the State; *Chesapeake & Ohio Ry. Co.* v. *Public Service Commission,* 242 U. S. 603; *Fort Smith Light & Traction Co.* v. *Bourland,* 267 U. S. 330. The

charter of the Colorado & Southern is a contract with the State. By accepting the charter, the Company assumed the obligation of providing intrastate service on every part of its line within the State, *Colorado & Southern Ry.* v. *Railroad Commission,* 54 Colo., 64, 92–3. The extent and character of this service is subject to regulation by the State. The inherent power of a State to regulate intrastate traffic by requiring the railroad to operate every part of its line, like its power to order a particular service, is, of course, subject to the limitation that the order must not be unreasonable. But the fact that operation of the branch will necessarily result in financial loss, would, in no event, be more than an important circumstance bearing upon the reasonableness of the State's order requiring the service. In the case at bar no question of the reasonableness of the State's action can arise, because the State has not issued any order; it has merely protested against the Commission's releasing this Colorado corporation from the primary duty voluntarily assumed of maintaining some service on the branch. This, the Commission cannot do as respects intrastate commerce. Transportation Act, 1920, did not purport to take from the State its powers to control intrastate commerce. Nor did it confer upon the Commission power to release a corporation chartered by the State from its primary obligation to furnish service. If par. 18 of § 1 should be construed as authorizing the Commission to do so without the consent of the State, the provision would be unconstitutional. Compare *Texas* v. *Eastern Texas R. R. Co.,* 258 U. S. 204, 217. Such is the argument.

The argument rests upon a misconception of the nature of the power exercised by the Commission in authorizing abandonment under paragraphs 18-20. The certificate issues, not primarily to protect the railroad, but to protect interstate commerce from undue burdens or discrimination. The Commission by its order removes an ob-

struction which would otherwise prevent the railroad from performing its federal duty. Prejudice to interstate commerce may be effected in many ways. One way is by excessive expenditures from the common fund in the local interest, thereby lessening the ability of the carrier properly to serve interstate commerce. Expenditures in the local interest may be so large as to compel the carrier to raise reasonable interstate rates, or to abstain from making an appropriate reduction of such rates, or to curtail interstate service, or to forego facilities needed in interstate commerce. Likewise, excessive local expenditures may so weaken the financial condition of the carrier as to raise the cost of securing capital required for providing transportation facilities used in the service, and thus compel an increase of rates. Such depletion of the common resources in the local interest may conceivably be effected by continued operation of an intrastate branch in intrastate commerce at a large loss.

The sole objective of paragraphs 18-20 is the regulation of interstate commerce. Control is exerted over intrastate commerce only because such control is a necessary incident of freeing interstate commerce from the unreasonable burdens, obstruction or unjust discrimination which are found to result from operating a branch at a large loss. Congress has power to authorize abandonment, because the State's power to regulate and promote intrastate commerce may not be exercised in such a way as to prejudice interstate commerce. The exertion of the federal power to prevent prejudice to interstate commerce so arising from the operation of a branch in intrastate commerce is similar to that exerted when a State establishes intrastate rates so low that intrastate traffic does not bear its fair share of the cost of the service, *Railroad Commission of Wisconsin* v. *Chicago, Burlington & Quincy R. R. Co.,* 257 U. S. 563; *Nashville, Chattanooga & St. Louis Ry.* v. *Tennessee,* 262 U. S. 318; or when the

state authorities seek to compel the erection of a union station so expensive as unduly to deplete the financial resources of the carriers, *Railroad Commission* v. *Southern Pacific Co.*, 264 U. S. 331; or when one railroad seeks to construct an intrastate branch line, which will deplete its own financial resources or those of another interstate carrier, *Texas & Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*, 270 U. S. 266. The jurisdiction exercised by the Commission in these cases is in essence that which was invoked in *The Shreveport Case*, 234 U. S. 342, a power to prevent unjust preference to particular intrastate shippers or localities at the demonstrated expense of interstate commerce. But there is a broader basis for federal control.

This railroad, like most others, was chartered to engage in both intrastate and interstate commerce. The same instrumentality serves both. The two services are inextricably intertwined. The extent and manner in which one is performed, necessarily affects the performance of the other. Efficient performance of either is dependent upon the efficient performance of the transportation system as a whole. Congress did not, in the respect here under consideration, assume exclusive regulation of the common instrumentality, as it did in respect to safety coupling devices. Compare *Southern Ry. Co.* v. *United States*, 222 U. S. 20; *Atlantic Coast Line* v. *Georgia*, 234 U. S. 280, 293. It expressly excluded from federal control that part of the railroad which consists of " spur, industrial, team, switching or side tracks located . . . wholly within one State." See *Texas & Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*, *supra*. But as to the rest of every railroad line used in interstate commerce, Congress reserved the full authority to determine whether, and to what extent, public convenience and necessity permit of abandonment.

Recognition of the effect upon interstate commerce of the use of the same instrumentality in intrastate com-

merce is manifested also in other provisions of Trans-
portation Act, 1920. It is a reason for the exclusive
jurisdiction conferred upon the Commission by § 20a over
the issuance of securities. Compare *Venner* v. *Michigan
Central R. R. Co., ante,* p. 127. It is the ground upon
which the validity of the recapture clause, as applied to
surplus profits derived from intrastate operations, was
sustained in *Dayton-Goose Creek Ry.* v. *United States,*
263 U. S. 456, 485. It is the justification for those pro-
visions of the Interstate Commerce Act which require
carriers engaged in both intrastate and interstate com-
merce to render accounts of all their business. *Interstate
Commerce Commission* v. *Goodrich Transit Co.,* 224 U. S.
194. And upon it rests likewise the power exerted by
this Court in setting aside the state regulations involved
in *Union Pacific R. R. Co.* v. *Public Service Commission,*
248 U. S. 67, and *St. Louis & San Francisco Ry. Co.* v.
*Public Service Commission,* 254 U. S. 535. See also
*United States* v. *Ferger,* 250 U. S. 199; *Stafford* v. *Wal-
lace,* 258 U. S. 495; *Chicago Board of Trade* v. *Olsen,* 262
U. S. 1.

The exercise of federal power in authorizing abandon-
ment is not an invasion of a field reserved to the State.
The obligation assumed by the corporation under its
charter of providing intrastate service on every part of its
line within the State is subordinate to the performance by
it of its federal duty, also assumed, efficiently to render
transportation services in interstate commerce. There is
no contention here that the railroad by its charter agreed
in terms to continue to operate this branch regardless of
loss. Compare *Railroad Commission* v. *Eastern Texas
R. R. Co.,* 264 U. S. 79. But even explicit charter pro-
visions must yield to the paramount power of Congress
to regulate interstate commerce. *New York* v. *United
States,* 257 U. S. 591, 601. Because the same instrumen-
tality serves both, Congress has power to assume not only
some control, but paramount control, insofar as interstate

commerce is involved.   It may determine to what extent
and in what manner intrastate service must be subordi-
nated in order that interstate service may be adequately
rendered.   The power to make the determination inheres
in the United States as an incident of its power over inter-
state commerce.   The making of this determination
involves an exercise of judgment upon the facts of the
particular case.   The authority to find the facts and to
exercise thereon the judgment whether abandonment is
consistent with public convenience and necessity, Con-
gress conferred upon the Commission.

*Second.*  The State contends further that the order is
void, so far as it relates to intrastate traffic, because essen-
tial findings were not made and, also, because essential
findings made were not supported by evidence.   *The
Chicago Junction Case,* 264 U. S. 258.   The findings
alleged to be essential and lacking are that by continued
operation of the branch interstate or foreign commerce
will be discriminated against, or that the Company will
be prevented from earning a fair return on the value of
its properties as a whole, or that the entire intrastate busi-
ness in Colorado will not earn such a return upon the
property used in conducting that business.   The other
objections urged are that the evidence of past operating
deficits on the branch, which include both interstate and
intrastate traffic, does not support the finding that opera-
tion in intrastate traffic alone will result in like deficits;
and that the decision of the Commission was improperly
influenced by an offer to lease the line to the protestants
at a nominal rental.   All the evidence before the Com-
mission was introduced below and is, in substance, incor-
porated in the record on appeal.   Both classes of objec-
tions must, therefore, be considered.   *New England
Divisions Case,* 261 U. S. 184, 203.

Before examining the specific objections, the nature of
the determination to be made by the Commission upon
an application for leave to abandon should be further con-

sidered. As every projected abandonment of any part of a railroad engaged in both interstate and intrastate commerce may conceivably involve a conflict between state and national interests, the consent of the Commission must be obtained by the railroad in every case. To ensure due consideration of the local interests, Congress provided that a copy of every application must be promptly filed with the Governor of the State directly affected, that notice of the application must be published in some local newspaper, and that the appropriate state authorities should have "the right to make before the Commission such representations as they may deem just and proper for preserving the rights and interests of their people and the States, respectively, involved in such proceedings." In practice, representatives of state regulatory bodies sit, sometimes, with the representatives of the Commission at hearings upon the application for a certificate. Occasionally, the Commission leaves the preliminary enquiry to the state body. And always consideration is given by the Commission to the representations of the state authorities.[1]

While the constitutional basis of authority to issue the certificate of abandonment is the power of Congress to regulate interstate commerce, the Act does not make issuance of the certificate conditional upon a finding that continued operation will result in discrimination against

---

[1] From the enactment of Transportation Act, 1920, to February 18, 1926, the number of applications for abandonment acted on was 191. Of these, 9 were dismissed by the Commission for want of jurisdiction; 11 were denied; 170 were granted. Of these 170, only 6 were granted contrary to the recommendation of the state authorities. Of the 47 cases in which state authorities made specific recommendations, the Commission acted in 38 in accordance therewith. In 2 cases in which the State recommended postponement, the Commission denied the application. In one, in which the State recommended denial of the application, the Commission postponed decision pending the result of operation during a test period.

interstate commerce, or that it will result in a denial of just compensation for the use in intrastate commerce of the property of the carrier within the State, or that it will result in a denial of such compensation for the property within the State used in commerce intrastate and interstate. The sole test prescribed is that abandonment be consistent with public necessity and convenience. In determining whether it is, the Commission must have regard to the needs of both intrastate and interstate commerce. For it was a purpose of Transportation Act, 1920, to establish and maintain adequate service for both. *Wisconsin Railroad Commission v. Chicago, Burlington & Quincy R. R. Co.,* 257 U. S. 563, 585, 587, 589; *New England Divisions Case,* 261 U. S. 184; *Dayton-Goose Creek Ry. Co. v. United States,* 263 U. S. 456, 485; *United States v. Village of Hubbard,* 266 U. S. 474. The benefit to one of the abandonment must be weighed against the inconvenience and loss to which the other will thereby be subjected. Conversely, the benefits to particular communities and commerce of continued operation must be weighed against the burden thereby imposed upon other commerce. Compare *Proposed Abandonment by Boston & Maine R. R.,* 105 I. C. C. 13, 16. The result of this weighing—the judgment of the Commission—is expressed by its order granting or denying the certificate.

It is rare that the application for leave to abandon actually involves a conflict between the needs of interstate and of intrastate commerce. In many cases, it is clear that the extent of the whole traffic, the degree of dependence of the communities directly affected upon the particular means of transportation, and other attendant conditions, are such that the carrier may not justly be required to continue to bear the financial loss necessarily entailed by operation.[2] In some cases, although the vol-

---

[2] See e. g., *Abandonment, etc., by Southern Pacific Co.,* 72 I. C. C. 404.

ume of the whole traffic is small, the question is whether abandonment may justly be permitted, in view of the fact that it would subject the communities directly affected to serious injury while continued operation would impose a relatively light burden upon a prosperous carrier.[3] The problem and the process are substantially the same in these cases as where the conflict is between the needs of intrastate and of interstate commerce. Whatever the precise nature of these conflicting needs, the determination is made upon a balancing of the respective interests—the effort being to decide what fairness to all concerned demands. In that balancing, the fact of demonstrated prejudice to interstate commerce and the absence of earnings adequate to afford reasonable compensation are, of course, relevant and may often be controlling. But the Act does not make issuance of the certificate dependent upon a specific finding to that effect.

An examination of the extensive record and of the three opinions of the Commission convinces us that no relevant fact was ignored, that there was ample evidence to support the facts found, and that the judgment of the Commission was not improperly influenced by the offer to lease the line to the protestants at a nominal rental. The case at bar is unlike *Texas* v. *Eastern Texas R. R. Co.*, 258 U. S. 204. There, the railroad was permitted to be relieved only from continuing operations in interstate commerce. It was being operated independently, and not as a branch of any railroad engaged in interstate commerce.

---

[3] Compare *Application of Green Bay & Western R. R. Co.*, 70 I. C. C. 251; *Abandonment of White-Cloud Big Rapids Branch, etc.*, 72 I. C. C. 303; *Proposed Abandonment of Lincoln Branch, etc.*, 94 I. C. C. 624, with *Abandonment, etc., Oregon Trunk Ry.*, 72 I. C. C. 679; *Abandonment of Branch Line by Pere Marquette Ry.*, 90 I. C. C. 100; *Abandonment, etc., by Central New England Ry. Co.*, 94 I. C. C. 405; *Abandonment, etc., by Coudersport & Port Albany R. R. Co.*, 99 I. C. C. 310; *Abandonment, etc., by Chicago & Northwestern Ry. Co.*, 105 I. C. C. 273.

Losses incurred in its operation would not be reflected in the accounts of any interstate carrier; and no interstate carrier would have had to make good deficits so incurred. Its continued operation could not burden or prejudice interstate commerce, for the Commission in issuing its certificate had adjudged that public necessity and convenience did not demand the continuance of its interstate services.

*Affirmed.*