## STATE OF GEORGIA et al. v. UNITED STATES et al.

No. 44.

District Court, E. D. Virginia.

Aug. 8, 1939.

Marshall L. Allison and B. D. Murphy, Asst. Attys. Gen., for State of Georgia.

Elmer B. Collins, Sp. Asst. to Atty. Gen. (Thurman Arnold, Asst. Atty. Gen., and Sterling Hutcheson, U. S. Atty., of Richmond, Va., of counsel), for the United States.

Thomas M. Ross, of Washington, D. C. (Daniel W. Knowlton, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Sidney S. Alderman, of Washington, D. C., and Rembert Marshall, of Atlanta, Ga. (Thomas B. Gay, of Richmond, Va., of counsel), for Southern Railway Company.

Before PARKER, Circuit Judge, and POLLARD and DOBIE, District Judges.

PARKER, Circuit Judge.

This is a suit to enjoin the enforcement of an order of the Interstate Commerce Commission permitting the abandonment by the Southern Railway Company of 40.1

miles of its Atlanta-Fort Valley line in the State of Georgia. The suit is brought by the State of Georgia, its Public Service Commission and one of its Counties, as plaintiffs, against the United States, the Interstate Commerce Commission and the Southern Railway Company, as defendants. Interlocutory injunction is asked and a special court of three judges has been convened pursuant to statute. 28 U.S.C.A. § 47. At the hearing upon the application for interlocutory injunction, it has been agreed that the case be submitted for final decree on the pleadings, the reports of the Commission and the affidavit filed by defendant Southern Railway Company's vice president.

The Southern Railway Company is a Virginia corporation engaged in the operation in interstate commerce of a large interstate system of steam railroads running into and through the States of Virginia, North Carolina, South Carolina, Georgia, Alabama, Mississippi, Tennessee, Kentucky, Indiana and Illinois. One of the lines that it operates in connection with this interstate system is the Atlanta-Fort Valley line, which it acquired under a foreclosure decree in the year 1895. This line was constructed by the Atlanta & Florida Railway Company in 1887–1888 between Atlanta and Fort Valley, Ga., a distance of a little over 100 miles, under a franchise granted by the legislature of Georgia. The entire line lies within the State of Georgia; and since its construction it has been operated throughout its entire length.

In 1935 the Southern Railway Company petitioned the Interstate Commerce Commission to be allowed to abandon that portion of the line extending from a point about 1.5 miles south of Roseland to Williamson, where the line connects with and crosses the company's McDonough-Columbus line. The portion of the line proposed to be abandoned is paralleled by the company's line from Atlanta to Columbus by way of McDonough; and abandonment was asked on the ground that the maintenance and operation of the two lines between Williamson and Atlanta constituted an unnecessary burden upon interstate commerce. Abandonment was opposed by the Georgia Public Service Commission, and report was entered on May 29, 1936, finding that a further test of operation for one year should be made. This was done and, supplemental petition again asking the right to abandon having been filed in 1937,

the Commission on April 23, 1938, made a report finding that "the present and future public convenience and necessity permit the abandonment" of the portion of the line proposed to be abandoned and entered an order accordingly.

The report and the supplemental report of the Commission find fully the primary facts upon which the finding of public convenience and necessity is based; and plaintiffs do not contend that the evidence before the Commission does not sustain these primary findings. Their contention is that the company, as the result of the method under which it acquired the Atlanta-Fort Valley line, assumed the burden of the franchise granted the Atlanta & Florida Railway Company to operate the entire line between Atlanta and Fort Valley, and that, in the absence of a showing that the operation of that line is burdensome on interstate commerce, the Commission is without power to permit the abandonment of any portion thereof. The company declined to submit data relating to traffic originating on the portion of the line which it was not proposed to abandon; and the Commission held that "the traffic handled on the Atlanta-Fort Valley line, or which might have been handled thereon, beyond the portion proposed to be abandoned, and the revenue therefrom which might have been credited to the line sought to be abandoned if such traffic had been transported thereover, are not relevant." There is but one question in the case, therefore, i. e. whether the Commission may permit the abandonment by an interstate carrier of a portion of a line of railroad chartered by a state without a showing that the operation of the entire line, and not merely the portion sought to be abandoned, constitutes a burden upon interstate commerce. We think that the question must be answered in the affirmative.

■■■ The transportation act of 1920 introduced into federal legislation a new railroad policy, seeking to insure an adequate transportation service. A primary aim of that policy is to secure the avoidance of waste. Texas v. United States, 292 U.S. 522, 532, 54 S.Ct. 819, 78 L.Ed. 1402. As a means of avoiding the waste incident to the maintenance of transportation facilities, a certificate of public convenience and necessity from the Commission is required before a carrier by railroad engaged in interstate commerce may

extend any of its lines; and carriers are permitted to abandon "all or any portion of a line" upon obtaining such certificate. 49 U.S.C.A. § 1(18) (19) (20). Obligations imposed by state laws do not limit the power of the Commission under these provisions. Texas v. United States, supra; State of Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878.

■ Practically the same argument is made in support of plaintiff's position here that was made in State of Colorado v. United States, supra, 271 U.S. at pages 161, 162, 46 S.Ct. 452, at page 454, 70 L. Ed. 878, and what was said by the Supreme Court in that case is a sufficient answer to plaintiff's position. The court said:

"The sole objective of paragraphs 18-20 is the regulation of interstate commerce. Control is exerted over intrastate commerce only because such control is a necessary incident of freeing interstate commerce from the unreasonable burdens, obstructions or unjust discrimination which is found to result from operating a branch at a large loss. Congress has power to authorize abandonment, because the state's power to regulate and promote intrastate commerce may not be exercised in such a way as to prejudice interstate commerce. * * *

"This railroad, like most others, was chartered to engage in both intrastate and interstate commerce. The same instrumentality serves both. The two services are inextricably intertwined. The extent and manner in which one is performed, necessarily affects the performance of the other. Efficient performance of either is dependent upon the efficient performance of the transportation system as a whole. Congress did not, in the respect here under consideration, assume exclusive regulation of the common instrumentality, as it did in respect to safety coupling devices. Compare Southern Ry. Co. v. United States, 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72; Atlantic Coast Line R. Co. v. Georgia, 234 U.S. 280, 293, 34 S.Ct. 829, 58 L.Ed. 1312. It expressly excluded from federal control that part of the railroad which consists of 'spur, industrial, team, switching or side tracks located * * * wholly within one state.' See Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co. [supra] 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578. * * * But as to the rest of every railroad line used in interstate commerce, Congress reserved the full authority to determine whether, and to what extent, public convenience and necessity permit of abandonment.

* * *

"The exercise of federal power in authorizing abandonment is not an invasion of a field reserved to the state. The obligation assumed by the corporation under its charter of providing intrastate service on every part of its line within the state is subordinate to the performance by it of its federal duty, also assumed, efficiently to render transportation services in interstate commerce. There is no contention here that the railroad by its charter agreed in terms to continue to operate this branch regardless of loss. Compare Railroad Commission v. Eastern Texas R. R. Co., 264 U.S. 79, 44 S.Ct. 247, 68 L.Ed. 569. But even explicit charter provisions must yield to the paramount power of Congress to regulate interstate commerce. New York v. United States, 257 U.S. 591, 601, 42 S. Ct. 239, 66 L.Ed. 385. Because the same instrumentality serves both, Congress has power to assume not only some control, but paramount control insofar as interstate commerce is involved. It may determine to what extent and in what manner intrastate service must be subordinated in order that interstate service may be adequately rendered. The power to make the determination inheres in the United States as an incident of its power over interstate commerce. The making of this determination involves an exercise of judgment upon the facts of the particular case. The authority to find the facts and to exercise thereon the judgment whether abandonment is consistent with public convenience and necessity, Congress conferred upon the Commission."

The act authorizes the abandonment of a portion of a line as well as an entire line; and, as stated above, "the obligation assumed by the corporation under its charter of providing intrastate service on every part of its line within the state is subordinate to the performance by it of its federal duty, also assumed, efficiently to render transportation services in interstate commerce". The abandonment in the State of Colorado case was of a branch line; and one of the arguments there rejected was that the railroad might not be permitted to abandon a part of its lines within a state while operating others, but must bear the burdens of the franchise

while enjoying its privileges. No more cogent is the argument that a line must be considered by the Commission as a whole on a question of abandonment merely because the entire line has been constructed under the franchise of a single charter. In Transit Commission v. United States, 284 U.S. 360, 52 S.Ct. 157, 76 L.Ed. 342, the Supreme Court expressly approved an order permitting the abandonment of a portion of a line; and a similar order was approved in United States Feldspar Corporation v. United States, D.C., 38 F.2d 91, 94. In the case last cited Judge Learned Hand, speaking for the special court of three judges, said: "In the case at bar the railway continued upon the remainder of its line to carry on interstate commerce. To be sure, the report of the Commission does not expressly so find, but the proof shows it, the petitioner did not question it, and the report presupposes it. It was therefore within the jurisdiction of the Commission to determine whether a part of the tracks should be abandoned not only for interstate, but for intrastate commerce; it need not leave it a parasite upon the national system of transportation. The only question is whether that jurisdiction has been abused, a matter over which our powers of review are limited; very properly, in view of the greater experience of the Commission in such matters."

It is further argued that, even though abandonment of a portion of a line may be authorized, this can be done only upon a showing that the operation of the line as a whole, and not merely of the part to be abandoned, constitutes a burden upon interstate commerce. We see nothing in this. It is manifest that, if the power to permit abandonment of a portion of a line exists, such power must be exercised with reference to the effect upon interstate commerce of the operation of that portion, and not of the remainder; since, otherwise, consideration would be given to matters having no relation to the effect of the proposed abandonment, and the power of the Commission to eliminate waste and effect needed economies would be greatly impaired. The fact that both portions of the line may have been constructed under a single franchise throws no light upon how they severally affect interstate commerce; and, as we have already seen, the provisions of state law and the obligations imposed by it constitute no limitation upon the powers of the Commission under the act.

For the reasons stated, the injunction will be denied and the complaint will be dismissed.

Injunction denied and complaint dismissed.