**STATE of NORTH CAROLINA, North Carolina Utilities Commission, County Commissioners of Richmond County, Town of Ellerbe, Harris M. McRae, North Carolina Farm Bureau Federation, Incorporated, Robert E. Swann, North Carolina Pulp Company, Commonwealth Hosiery Mills, and R. L. Bennett, Plaintiffs,**

v.

**UNITED STATES of America, Interstate Commerce Commission and Norfolk Southern Railway Company, Defendants.**

### Civ. No. 302.

United States District Court
M. D. North Carolina.

Argued Sept. 17, 1954.

Decided Sept. 29, 1954.

Harry McMullan, Atty. Gen., North Carolina, John Hill Paylor, Asst. Atty. Gen., North Carolina, Pittman & Webb, Rockingham, N. C., Broughton & Broughton, Raleigh, N. C., Jones & Jones, Rockingham, N. C., for plaintiffs.

Arthur J. Winder, Cadwallader J. Collins, Norfolk, Va., Simms & Simms, Raleigh, N. C., for defendant Norfolk Southern Railway Co.

Edward M. Reidy, Gen. Counsel, I. K. Hay, Asst. Gen. Counsel, Washington, D. C., James E. Kilday, Willard R. Memlar, Special Assts. to the Atty. Gen., Stanley N. Barnes, Asst. Atty. Gen., and Edwin M. Stanley, U. S. Atty., Greensboro, N. C., for defendants United States and Interstate Commerce Commission.

Before PARKER, Circuit Judge, and HAYES and WARLICK, District Judges.

PARKER, Circuit Judge.

This is an action to enjoin and set aside that portion of an order of the Interstate Commerce Commission which authorizes the Norfolk Southern Railway Company to abandon a portion of one of its branch lines. A court of three judges has been constituted under 28 U.S.C. § 2284, as required by 28 U.S.C. § 2325, and the case has been submitted for final decree upon the record made before the Commission and the briefs and oral arguments of counsel. It is admitted that the primary findings of fact made by the Commission are supported by the evidence, but the contention of plaintiffs is that those findings do not support the ultimate finding of the Commission and that its order is arbitrary and unreasonable.

The proceeding before the Commission was begun on March 7, 1951, when the railway company filed an application in which it asked leave to abandon its

branch line, 17.508 miles in length, between Candor, North Carolina and Ellerbe, North Carolina. An examiner of the Commission heard evidence and a report was submitted recommending that the petition be denied except as to the southern portion of the line, 6.22 miles in length, between Plainview and Ellerbe, and that as to this portion of the line the requested leave to abandon be granted. In April 1953 the proceeding was heard before Division 4 of the Commission and order was entered in accordance with the recommendations of the examiner. Upon petition for reconsideration of that part of the order relating to the southern portion of the line, the proceeding was heard before the full Commission, which on November 17, 1952 entered an order revoking the order of Division 4 and denying in toto the application for leave to abandon. The railway company filed an application for reconsideration of this order and the proceeding was reopened for further hearing and referred to the examiner who had prepared the proposed report on the original hearing. He heard evidence and filed a report to the effect that no additional evidence had been introduced at the further hearing to warrant a change in the order of the Commission. The Commission, however, upon the coming in of this report went fully into all the facts of the case and on May 17, 1954 filed its report and order which, in effect, sustained the position originally taken by the examiner and Division 4, granting leave to the railway company to abandon the southern portion of the line but denying leave to abandon the northern portion.

The facts are fully set forth in the reports of the Commission and the trial examiner and need not be repeated in detail here. The Commission found upon ample supporting evidence that the southern portion of the line was being operated at a loss and that the cost of its upkeep and the burden which this would impose upon interstate commerce was not justified by the greater convenience which would be afforded some shippers by its continuance. Summarizing its conclusions with respect to the matter the Commission said:

"The evidence adduced at the further hearing has served to convince us that the northern portion of the line has provided sufficient traffic and operating revenues to produce profits after the cost of maintaining and operating that portion of the line. It appears that the contribution to the applicant's system of the northern portion will improve in the future. We also are convinced that in the past the southern portion has been a liability to the line and reduced or eliminated the profits which the northern portion provided. Some of the protestants have testified that prospects for improved productivity and need for more rail service at points on the southern portion are reasonably bright. However, the efforts of the shippers on the southern portion to increase the traffic they offer to the line are mostly prospective, and do not appear to be of sufficient substance to support a finding that there is a present and future need for service over the southern portion.

"In view of the entire record herein we find, that in order to retain the northern portion for a further reasonable period of trial, the financial loss of its operation, if any, will not impose an undue or unnecessary burden upon the applicant or upon interstate commerce. However, the further retention in service of the southern portion would have the opposite effect and will not be required in the public interest. As in most cases where the abandonment of a line is permitted, some injury and inconvenience to certain shippers is unavoidable. In this instance, we find that the abandonment of the southern portion will have the effect of preserving the northern portion for continued operation, and

will result in benefits to the public that will outweigh the losses a few shippers will be required to endure."

In view of the losses unquestionably sustained in the operation of the southern portion of the line and the expense which must be incurred to keep that portion in operation, it cannot reasonably be said that the order of the Commission was without support in the findings or in the evidence; and whether the prospective loss to the public and shippers from discontinuance of the line was sufficient to counterbalance the loss to the railway company and the burden on interstate commerce which would result from its continued operation is a matter which Congress has committed to the judgment of the Commission. Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878; State of Georgia v. United States, D.C., 28 F.Supp. 749. A finding that the Commission has abused its discretion in the matter would clearly not be warranted, and in the absence of such a finding it is well settled that we may not substitute our judgment for that of the Commission. As said in Bondurant v. United States, D.C., 50 F. Supp. 704, 706, another three-judge case involving the exercise by the Commission of powers granted it by Congress:

"We cannot say that the Commission's findings are not supported by the evidence, that they involve any error of law or that they are so arbitrary or unreasonable as to amount to an abuse of discretion. This being true, the relief prayed for must be denied. 'This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it.' Virginian Ry. Co. v. United States, 272 U.S. 658, 665, 666, 47

S.Ct. 222, 225, 71 L.Ed. 463; Interstate Commerce Commission v. Union Pac. R. Co., 222 U.S. 541, 32 S. Ct. 108, 56 L.Ed. 308."

The validity of the Commission's order does not depend upon whether there was or was not evidence on the rehearing which justified a different order from that originally entered. When the case was reopened for further hearing, the Commission had full power to enter any order which it thought proper on the entire record; and the rule to be applied by us on review is not different because such order may amount to a reversal of the one originally entered. As said in Beard-Laney v. United States, D.C., 83 F.Supp. 27, 33:

"The rules to be applied in reviewing the order of the Commission are not different because that order resulted from a reversal of a prior decision of the hearing division upon a petition for rehearing. The fact that a rehearing was granted shows that the questions involved were carefully considered and the ultimate decision of the division, which received the approval of the Commission, was the final and definitive action of the Commission, which is what we are authorized to review; and it is to be reviewed in the same way and under the same limitations as other reviewable orders. We may not substitute our judgment for that of the Commission because upon a rehearing and fuller consideration of the facts it has arrived at a different conclusion from that which its hearing division had first expressed. Lang Transp. Corp. v. United States, D.C., 75 F.Supp. 915, 925."

For the reasons stated the injunction will be denied and the suit will be dismissed.

Injunction denied and suit dismissed.