**TRI–B CORPORATION, SHELBY, IOWA,** Farmers Elevator, Inc., Shelby, Iowa, Albert Schirm, Walnut, Iowa, Van Nostrand Grain Co., Avoca, Iowa, Farmers Cooperative Creamery, Avoca, Iowa, Farmers Savings Bank, Shelby, Iowa, Town of Shelby, Iowa, and Iowa State Commerce Commission, Plaintiffs,

v.

**INTERSTATE COMMERCE COMMIS-SION and the United States of America, Defendants,**

and

Chicago, Rock Island and Pacific Railroad Company, Intervenor.

Civ. No. 3–649–W.

United States District Court
S. D. Iowa, W. D.
April 29, 1966.

Manning Walker, Avoca, Iowa, Leo J. Steffen, Des Moines, Iowa, for plaintiffs.

Thomas H. Ploss, Washington, D. C., for defendants.

B. A. Webster, Jr., Des Moines, Iowa, Thomas I. Megan, Chicago, Ill., for intervenor.

Before JOHNSEN, Circuit Judge, and STEPHENSON and HANSON, District Judges.

HANSON, District Judge.

This is an action by the plaintiffs to enjoin the defendants under Title 28, U. S.C., Section 2323.

The following facts are admitted:

On September 12, 1963, the railroad filed with the Interstate Commerce Commission its application for abandonment of a line extending in a westerly direction from Avoca to Shelby, a distance of 8.39 miles, and in an easterly direction from Avoca to Walnut, a distance of 6.40 miles.

"That after protestants filed their resistance to said application, a hearing was held at Council Bluffs, Iowa, on January 20 and 21, 1964, before Examiner Hyman J. Blond; and as a result of which hearing, said examiner filed his written recommendations, consisting of twelve pages, in which said examiner recommended that Division 3 of the Interstate Commerce Commission find that the present and future public convenience and necessity had not been shown to permit the abandonment of the branch lines by the railroad company.

"That thereafter the applicant railroad company filed exceptions to the Examiner's recommendations, to which exceptions reply was duly made by these protestants and the matter was considered by Division 3 of the Interstate Commerce Commission without benefit of oral argument and on the 6th day of October, 1964, a decision and order of Division 3 was issued and in which the following finding was made:

'That the evidence considered in the light of the exceptions and the reply thereto does not warrant a result different from that reached by the hearing examiner; that the statement of facts, and conclusions and findings of the hearing examiner, being proper and correct in all material respects, should be, and they are hereby, affirmed and adopted as our own.'

And the Division ordered:

'That the order of the hearing examiner, served May 11, 1964, recommending that the application be denied be,

and it is hereby, adopted as the order of the Commission, Division 3, and that applicant's request for oral argument be, and it is hereby, denied.'

"That thereafter on the 26th day of October, 1964, a document entitled 'Notice to the parties' was served upon these plaintiffs wherein it was stated that the order served on October 6, 1964, had no force and effect.

"That thereafter Division 3 of the Interstate Commerce Commission issued a Report of the Commission dated December 10, 1964, permitting abandonment by the railroad company of those portions of its branch line between Shelby and Walnut, Iowa.

"That thereafter these plaintiffs filed a petition for reconsideration and for further hearing and requesting oral argument * * * and under service date of February 4, 1965, a document entitled 'Notice to the parties' was issued by the Interstate Commerce Commission staying the effective date of the Certificate and Order dated December 10, 1964, pending disposition of the protestants' petition for reconsideration and further hearing.

"Thereafter under service date of March 25, 1965, Division 3 of the Interstate Commerce Commission acting as an appellant division issued an order denying the protestants' petition for reconsideration and further hearing.

"That thereafter the protestants, these plaintiffs, filed a petition for Commission determination of the presence of issue of general transportation importance and requested oral argument thereon.

"The Interstate Commerce Commission issued an order denying said petition and making the effective date of Certificate and Order of December 10, 1964, effective twenty days from the service date thereof."

(1) The plaintiffs allege that the I. C.C. (Interstate Commerce Commission) lacked jurisdiction to change its decision of October 6, 1964, in that (a) it was beyond the statutory authority of the I.C.C.; (b) it was changed without notice to the parties; (c) that no party

excepted to the October 6, 1964, Order or requested reconsideration; and (d) that it violates the rules of administrative law relating to finality of process.

(2) The plaintiffs allege that the decision of the I.C.C. is contrary to the facts established in the record. Eleven specific errors are alleged.

(3) The plaintiffs allege that the I.C.C. decision violated due process in that (a) hearing and oral argument on the reconsideration was denied; and (b) the decision was contrary to the facts.

(4) The plaintiffs allege that the I.C.C. erred in its ultimate conclusion issuing the Certificate which is contrary to the facts.

(5) The plaintiffs allege that the decision of the I.C.C. exceeded its power and is so arbitrary as to transcend the powers conferred upon it.

The scope of review in railroad abandonment cases is well settled. See Moeller v. Interstate Commerce Commission, 201 F.Supp. 582 (S.D. of Iowa).

■ The scope of authority committed to the I.C.C. is to determine the past and future public necessity and convenience. Burlington Truck Lines v. United States, 371 U.S. 156, 167, 83 S.Ct. 239, 9 L.Ed.2d 207; Title 49, Section 1(18).

With reference to the track in question, the Examiner found that due to continuous deferment of maintenance work, the line's condition is generally poor. The stations on the line in question are non-agencies at Walnut, population 777, and Shelby, population 533. These stations are operated by the agent at Avoca which is 6.3 miles from Walnut and 8.5 miles from Shelby. The Chicago Great Western Railway operates within 17 miles of Walnut and 6 miles from Shelby. Shelby and Walnut are served by Iowa Highway 83, a county highway which transverses Avoca.

During the past five years freight service has been operated over the line on a tri-weekly schedule. Railroad service at Walnut is utilized by a grain elevator, a retailer of lumber and building

materials, and a produce and feed dealer; and at Shelby, by two grain elevators, a lumber dealer, and a coal merchant.

The Examiner found the railroad sustained a loss of $10,513.00 in 1961, a loss of $7,862.00 in 1962, and a loss of $1,971.00 for the first six months of 1963. Evidence is also noted by the Examiner which tended to show what the costs would be to the railroad in maintaining the line. The Examiner further found that these costs about equal the property tax that must be paid even if the line is abandoned; that the effect of operation of the line has been near the break even point; and that prospects for future traffic on the line is not dim and immediate foreseeable expenditures would not be inordinate.

The Commission reversed the Examiner and allowed the abandonment. Principally, the Commission differed with the Examiner on foreseeable expenditures. The Commission found that such expenses would be large in the future and require abandonment. They concluded that if the line would have to be abandoned in the near future, it would not be reasonable to require the expensive overpass to be built. The overpass does not have to be built if the line is abandoned. The Commission also found that the railroad would save large expenses while losing only a small amount of revenue since the products would be shipped to Avoca by railway and from there to Shelby and Walnut by truck and vice versa. The Commission found that the abandonment would not leave the area without adequate transportation.

The dissenting Commissioner felt that where two segments of a line are to be abandoned the evidence as to each of them should be considered separately before it can be said that the entire line should be abandoned. He cites Southern Pac. Co. Abandonment, 320 I.C.C. 38.

■ It is also undisputed in the record that the abandonment would put some burden on the local business served by the present line. When such is the case, the benefit of the abandonment must be weighed against this burden. Moeller v. Interstate Commerce Commission, supra; State of Colorado v. United States, 271 U.S. 153, 168, 46 S.Ct. 452, 70 L.Ed. 878; Burlington Truck Lines v. United States, supra; Southern R. Co. v. North Carolina, 376 U.S. 93, 84 S.Ct. 564, 11 L.Ed.2d 541. In this case the Commission did weigh the conflicting interests, and although this court might well have reached a contrary conclusion, it cannot be said there was a lack of substantial evidence to support the Commission's findings. Accordingly, the decision of the Commission cannot be said to be against the evidence and arbitrary or capricious in any respect.

■ It is necessary also that the decision of the Commission be based on the proper standards and criteria, I.C.C. v. J-T Transport Co., 368 U.S. 81, 93, 82 S.Ct. 204, 7 L.Ed.2d 147, but the court cannot say that the Commission improperly considered any of the standards or criteria. See Title 49 U.S.C., Sections 18, 19, 20, and 21.

■ The Commission has some discretion in this field. Pennsylvania R. Co. v. United States, 40 F.2d 921 (D.C.Pa.); State of North Carolina v. United States, 124 F.Supp. 529 (D.C.N.C.). The question of partial abandonment was considered in Creston Grain & Lumber, Inc. v. United States, D.C., 214 F.Supp. 840. The Commission has the authority to allow partial or complete abandonment of the line in question. There is evidence as a whole to support the decision of the Commission and certainly nothing shows as a matter of law that only a partial abandonment should have been allowed. The plaintiffs contend that it was error not to require the Railroad to submit financial data properly separating the revenues and expenses of the two disconnected branch lines. In the absence of showing any substantial prejudice and in the absence of any showing that the separate costs could not have been ascertained from the available data, it is not a basis to set aside the Order of the Commission. See Creston Grain &

Lumber, Inc. v. United States, supra, p. 844.

It is unnecessary to set out every allegation in which plaintiffs claim that the decision of the Commission was against the facts or where the Commission is alleged to have erred in giving improper weight to certain facts. The court has carefully considered each allegation and finds that the decision is not against the facts and the Commission did not improperly apply the relevant standards and criteria.

The court next considers whether the Commission exceeded its authority in changing its October 6, 1964, Order or in the manner of changing its Order. On October 6, 1964, the Commission entered an Order which reads in part as follows:

"We find, That the evidence considered in the light of the exceptions, and the reply thereto, does not warrant a result different from that reached by the hearing examiner: that the statement of facts, the conclusions and findings of the hearing examiner, being proper and correct in all material respects, should be, and they are hereby, affirmed and adopted as our own.

It is ordered, That the order of the hearing examiner, served May 11, 1964, recommending that the application be denied be, and it is hereby, adopted as the Order of the Commission, Division 3, and that applicant's request for oral argument be, and it is hereby, denied."

On October 22, 1964, the Commission served the following notice:

"The Decision and Order in the above-entitled proceeding, decided September 29, 1964, which was served on October 6, 1964, was inadvertently issued and does not correctly reflect action of the Commission, Division 3, Tuggle, Murphy, and Walrath and consequently has no force and effect.

A final report and order will be issued at a later date."

On December 10, 1964, the Commission filed a report and entered an Order contrary to the recommendations of the Examiner and allowed the abandonment.

The plaintiffs filed a motion for reconsideration and alleged that the Commission modified its previous Order without granting notice and hearing which motion was denied. Cf., Riss & Co. v. United States, 100 F.Supp. 468 (W.D.Mo.).

Plaintiffs now urge "The Commission acted arbitrarily, capriciously and exceeded its jurisdiction in modifying its order of October 6, 1964," citing American Trucking Ass'ns v. Frisco Transp. Co., 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1953). In that case the Supreme Court held that 49 U.S.C., Section 17(3) vested power in the Interstate Commerce Commission to correct errors on its own initiative, 358 U.S. at p. 145, 79 S.Ct. 170. However, the power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because of a change in policy. United States v. Seatrain Lines, 329 U.S. 424, 429, 67 S.Ct. 435, 91 L.Ed. 396 (1946). In the matter at hand the Commission served notice twenty days after its initial order was served that said order was inadvertently issued, however, no opportunity for further hearing was granted plaintiffs, nor were plaintiffs then notified that the Commission contemplated a holding contrary to the recommendations of the examiner. In American Trucking, supra, 358 U.S. at pages 144–145, 79 S.Ct. at page 177, the Supreme Court noted that on another occasion it had ruled that the power, if any, to modify certificates issued due to inadvertence, "may only be exercised after proper opportunity for notice and hearing." See United States v. Watson Bros. Transportation Co., 350 U.S. 927, 76 S.Ct. 302, 100 L.Ed. 810 (1956), affirming 132 F.Supp. 905 (D.C. Neb. 1955). An examination of the latter case indicates that the erroneous certificate sought to be corrected by the Commission on its own motion without notice and hearing had been issued four years prior thereto. It was also claimed that plaintiffs had spent considerable

sums of money for equipment to be used in rendering the service authorized by the erroneous certificate. In the matter at hand no harm is shown. The notice of error was given to the parties within a matter of days. The final report and order was issued less than two months later. Ordinarily, a change in an order or decision without notice and opportunity to be heard would be held to be a violation of due process and thus invalid. In the matter at hand it appears to the Court that error, if any, was without prejudice. None of the parties changed their position because of the delay and ultimate reversal of the decision. The final decision by Division 3 was based on the record then completed by all parties. Nothing further was offered by anyone. Neither is there any indication whatsoever that there was a change in policy. It should also be noted that after the final decision was entered plaintiffs filed petition for further hearing and reconsideration. Action was stayed by the Commission pending disposition of the petition for reconsideration, which on March 25, 1965, was denied by Division 3 acting as an Appellate Division. Thereafter plaintiffs filed a petition with the Interstate Commerce Commission seeking a finding that the proceeding then pending involved issues of general transportation.[1] The Commission on April 21, 1965, denied the petition and ordered that the certificate and order of December 10, 1964, be effective twenty days after the instant Order was served.

We are satisfied on the entire record that plaintiffs had a fair hearing and the decision of the Commission was reached upon the application of proper standards and supported by substantial evidence.

Accordingly, it will be Ordered that the relief requested in the plaintiffs' petition will be denied and the complaint dismissed.

JOHNSEN, Circuit Judge (concurring).

I concur in Judge Hanson's opinion, but desire to add a word on what to me has been, in the administrative significance thereof, the most bothersome question in the case.

Whatever may have been the circumstances under which the Commission's purported decision of October 6, 1964, was issued and entered (the Commission makes no explanation in its nullifying or revocatory notice of October 22, 1964), and regardless of whether this legally might have the status of a decision, I do not believe that it could in any event be contended to be one that was possessed of such administrative finality as to cause the situation to be no longer in the Commission's control at the time the obliterating notice was given. Stated differently, it seems to me that the abandonment application was a matter as to which the power to take further action on the merits, if the Commission desired to do so, still remained in its hands.

On this basis, the Commission, by its obliterating notice, did not engage in making reach at a situation as to which it had acted with such terminating absoluteness, either actually or ostensibly, as to have moved the immediate controversy out of its domain. If that had been the situation, I should have regarded it as necessary for the Commission, in order to effect administrative recapture of any aspect of the situation, both to give notice and to accord opportunity for hearing before it could take any revocatory step.

Only because I think the matter had never been permitted thus to move out of the Commission's hands, do I feel that there could be no fundamental unfairness involved in its dealing with the merits of the situation, after its revocatory notice, upon the basis of the proceedings which had theretofore been had and in not according a further hearing upon what its final decision should be. Such a hearing would doubtless have served to better satisfy the parties, but I do not believe that it was in the circumstances required as a matter of due process.

I should add the explanation that my reason for regarding the Commission as

still having power to deal with the situation on the merits after its purported decision of October 6, 1964, is that under 49 CFR § 1.101 (a) (1), and (b), and (e), it had left the way open for a period of thirty days (which had not here expired) for a request to be made of it for a further hearing to introduce additional evidence. While § 1.101 (a) (2) provides in effect that any decision by a division of the Commission affirming a prior decision by a hearing officer "shall be considered administratively final", this necessarily has to be read in relation to sub. (b) and sub. (e), supra. The Commission might not choose to grant such a request in a particular situation, but the power was there for it to so act.

Thus the matter here was one in which the Commission did not have to make any extraneous reach in relation to its revocatory notice and subsequent decision, and in which on the situation involved I believe it was entitled to take the action which it did on the proceedings theretofore had and without need to accord a further hearing.