The BURKE–PARSONS–BOWLBY COR-PORATION, a corporation, C. A. Parrish Company, a copartnership, Mountaineer Lumber Company, Inc., a corporation, Hardwood Corporation of America, a corporation, Bill Bailey, doing business as B & K Feed Store, Monarch Rubber Company, a corporation, and the Public Service Commission of the State of West Virginia, a governmental corporation, Plaintiffs,

v.

UNITED STATES of America and the Interstate Commerce Commission, Defendants,

and

The Baltimore & Ohio Railroad Company, a corporation, Intervening Defendant.

Civ. A. No. 3337.

United States District Court
S. D. West Virginia,
Charleston Division.

April 13, 1967.

George M. Scott, Spencer, W. Va., Robert L. Hart, Public Service Commission, Charleston, W. Va., for plaintiffs.

John H. D. Wigger, Dept. of Justice, Washington, D. C., and Milton J. Ferguson, U. S. Atty., Charleston, W. Va., Leonard S. Goodman, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

George Doering, Sr., Gen. Atty., Baltimore, Md., and William F. Wunschel, Charleston, W. Va., for Baltimore & O. R. Co.

Before BOREMAN, Circuit Judge, and FIELD and CHRISTIE, District Judges.

PER CURIAM:

This is an action under 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321–2325, to enjoin and set aside the report, order and certificate of the Finance Review Board of the Interstate Commerce Commission in the proceeding entitled The Baltimore and Ohio Railroad Company Abandonment between Ravenswood and Spencer, West Virginia, Finance Docket No. 22930, decided March 29, 1965, and an order of Division 3 of the Commission entered on October 7, 1965, denying reconsideration of that decision. The effect of the orders in issue was to grant the application of The Baltimore and Ohio Railroad Company for a certificate of public convenience and necessity permitting its abandonment of a line running from Ravenswood to Spencer, West

Virginia, a total distance of approximately 33 miles.

The railroad filed its application before the Commission on January 7, 1964, and hearings were held upon the protests of various interested parties, including the plaintiffs herein, in July and August of that year. The hearing examiner filed his report on December 9, 1964, summarizing the factual details incident to the application, and recommended that the application of the Baltimore and Ohio be denied. The railroad then filed written exceptions to which the protestants replied, and on March 29, 1965, the Finance Review Board declined to adopt the recommendation of the examiner and entered its report, certificate and order granting the railroad's application. The protestants filed petitions for reconsideration and rehearing, and on October 27, 1965, Division 3 of the Commission, acting as an Appellate Division, entered an order denying such petitions. The complaint in the present proceeding was filed in this Court on October 29, 1965, and an order was entered on that date enjoining the enforcement of the Commission's order until such time as the present action shall have been determined by this Court.

The statutory authority of the Commission to authorize the abandonment of all or any portion of a line of railroad is found in 49 U.S.C.A. § 1(18), the relevant portion of which reads as follows:

" * * * [N]o carrier by railroad subject to this chapter shall abandon all or any portion of a line or railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment. * * * "

■■ Under this Section, of course, the sole question presented to the Commission for determination was whether public convenience and necessity would permit the proposed abandonment of the Ravenswood-Spencer branch line. Likewise, the Commission's determina-

tion of this question should not be annulled or set aside by this Court if upon the record it appears that it is based upon adequate findings which are supported by substantial evidence. The limits of our judicial review were stated in Miss. Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934) as follows: "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." In emphasizing this limited judicial role the Supreme Court stated in United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515 at 536, 66 S.Ct. 687 at 698, 90 L.Ed. 821 (1946):

" * * * It [the Court] cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law."

The Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. has not altered the scope of judicial review nor the accepted rule of administrative finality. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Baltimore Transfer Co. v. Interstate Commerce Com'n, 114 F.Supp. 558 (D.C. Md.1953) aff'd 346 U.S. 890, 74 S.Ct. 225, 98 L.Ed. 394.

The facts as set forth in the examiner's report were adopted by the Finance Review Board. They indicate that the line in question begins at Ravenswood on the Ohio River and winds through a sparsely settled area of Jackson and Roane Counties, West Virginia, for a distance of some 33 miles to the Town of Spencer. The roadway has many curves ranging up to 14°, crosses 59 bridges and the general physical condition of the branch is poor. Maximum allowable speeds are five to ten miles an hour and the condition of the roadway limits both the tonnage and number of cars that can be moved. Passenger service was discontinued in 1963 and

freight service is presently on a demand schedule, depending on traffic requirements.

Most of the traffic of the branch originates or terminates at Spencer. However, there are no private sidetracks on the branch and all shippers truck their rail freight to and from team tracks. The Spencer area is served by some nine motor common carriers in addition to contract and private motor carriers. In 1963 the branch handled 539 revenue carloads which was a decline of about 50% from the 1,089 carloads moved in the year 1953. During the past ten years the population of Roane County has declined and thirteen industries that provided substantial rail traffic have gone out of business.

The record indicates clearly that despite the fact that maintenance has been minimized in recent years, the branch continued to show an operating loss. While there was a sharp conflict in the evidence with respect to costs of repairing or rehabilitating the branch, the Finance Review Board concluded that such costs would be no less than $800,-000. While the plaintiffs and protestants argued that deferred maintenance and the resultant need of rehabilitation was due to the negligence of the railroad, the Review Board concluded that in the light of the losses incurred and the decline in traffic, there was no reason to believe that maintenance was deferred for any purpose other than to continue operations as long as possible.

Our examination of the record indicates that it supports the administrative conclusion that the possibility of increased use of the branch does not warrant a finding that the area served by it will generate sufficient traffic in the future to reduce losses that would be incurred in operating the branch at safe maintenance standards. We further agree that the record indicates that all of the shippers on the branch are currently using motor transportation to some degree and that there is adequate motor service available to meet the needs of the area shippers.

Section 1(18) specifies only one standard in a case such as this, namely, whether "the present or future public convenience and necessity permit of such abandonment." The broad scope of the Commission's authority in considering what does or does not comport with "public convenience and necessity" was recognized in Interstate Commerce Commission v. Parker, 326 U.S. 60 at 65, 65 S.Ct. 1490 at 1402, 89 L.Ed. 2051 (1944), as follows:

"Public convenience and necessity is not defined by the statute. The nouns in the phrase possess connotations which have evolved from the half-century experience of government in the regulation of transportation. When Congress in 1935 amended the Interstate Commerce Act by adding the Motor Carrier Act, it chose the same words to state the condition for new motor lines which had been employed for similar purposes for railroads in the same act since the Transportation Act of 1920, § 402(18) and (20), 41 Stat. 477. Such use indicated a continuation of the administrative and judicial interpretation of the language. Cf. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110. The Commission has assumed, as its duty under these earlier subsections, the finding of facts and the exercise of its judgment to determine public convenience and necessity. This Court approved this construction. Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 42, 51 S.Ct. 337, 339, 75 L.Ed. 824. Cf. Gray v. Powell, 314 U.S. 402, 411–412, 62 S.Ct. 326, 332, 86 L.Ed. 301. The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity. Cf. Powell v. United States, 300 U.S. 276, 287, 57 S.Ct. 470, 476, 81 L.Ed. 643. This, of course, gives administrative discretion to the Commission, Cf. McLean Trucking Co. v. United States, 321 U.S. 67, 87, 88, 64 S.Ct. 370,

380, 381, 88 L.Ed. 544, to draw its conclusion from the infinite variety of circumstances which may occur in specific instances."

This administrative discretion has long been recognized in cases arising under Section 1(18) of the Act. In Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35 at page 42, 51 S.Ct. 337 at page 339, 75 L.Ed. 824 (1931), the Court said:

"There is no specification of the considerations by which the Commission is to be governed in determining whether the public convenience and necessity require the proposed construction. Under the Act it was the duty of the Commission to find the facts and, in the exercise of a reasonable judgment, to determine that question. * * *"

In the present case we recognize, as did the Commission, that in most abandonments some inconvenience and hardship are imposed upon the users of the line. It is necessary, of course, in such cases that the Commission weigh the advantages of abandonment against the disadvantages. In the landmark case of State of Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878 (1926), the Court recognized that "The sole test prescribed is that abandonment be consistent with public necessity and convenience," and went on to state at page 166, 46 S.Ct. at page 455:

"* * * The making of this determination involves an exercise of judgment upon the facts of the particular case. The authority to find the facts and to exercise thereon the judgment whether abandonment is consistent with public convenience and necessity, Congress conferred upon the Commission."

In the exercise of its discretion the Commission has concluded that the abandonment of the line here in question is consistent with the public convenience and necessity. Our review of the record persuades us that this conclusion is based upon adequate findings which are supported by substantial evidence.

For the foregoing reasons the complaint will be dismissed.