972 F.2d 1336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ASSOCIATION FOR BRANCH LINE EQUALITY; Board of
Commissioners of Daniels County Mt; Board of Commissioners
of Valley County Mt; Montana Department of Commerce;
Montana Public Service Commission; Montana Joint Rail Labor
Legislative Council, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION; United States of America;
Respondents,
Burlington Northern Railroad Company, Respondent-Intervenor.
 No. 91-70173.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1992.
Decided July 16, 1992.
 
 Before FARRIS, NORRIS and KOZINSKI, Circuit Judges.
 MEMORANDUM*
 Petitioners challenge a decision by the Interstate Commerce Commission allowing Burlington Northern Railroad to abandon 48.4 miles of track between Scobey and Opheim, Montana.
 Discussion
 The Commission grants an application for railroad abandonment if it determines that present or future public convenience and necessity support it. 49 U.S.C. § 10903. In making such a determination, the Commission balances the potential harm to affected shippers and communities from abandonment against the present and future burden continued operations could impose on the rail carrier and interstate commerce. Colorado v. United States, 271 U.S. 153, 168 (1926). Judicial "review of the Commission's decision on a petition to abandon is very narrow." State of Idaho v. ICC, 939 F.2d 784, 789 (9th Cir.1991). This makes sense: It is "very difficult, if not impossible, to come up with objectively verifiable criteria by which to review ICC decisions." Southern Pacific Transp. Co. v. ICC, 871 F.2d 838, 844 (9th Cir.1989) (Kozinski, J., concurring).
 
 
 1
 Petitioners agree that BN was suffering losses on the Opheim-Scobey line, and that such losses ordinarily justify abandonment. See, e.g., Petitioners' Reply Brief at 3 ("There is no dispute over the fact that on an accounting basis the segment proposed to be abandoned is operated at a loss and that, in the absence of other evidence, such operating losses would warrant abandonment."). Petitioners nevertheless argue that the Commission may consider alternative rates the railroad could hypothetically set in deciding whether the railroad would be financially burdened by continued operation of the line. However, the Commission stated it has such authority "only upon a finding that the carrier involved has market dominance over the traffic in question." 7 I.C.C.2d 308, 316 (1990).
 
 
 2
 The question of the extent to which the Commission can consider alternative rates in abandonment proceedings is important. However, it is one we need not resolve in this case because the Commission alternatively held that "even if [it] could lawfully undertake such an analysis within the context of an abandonment proceeding, the record in this proceeding does not establish that the BN can provide reasonably related rates profitably." Id. at 317.
 
 
 3
 This question called for a prediction--what would happen in the future if BN imposed a different rate structure? This type of "predictive judgment[ ], when based upon credible evidence, [is] best left to the expertise of the administrative agency familiar with the industry." Southern Pacific, 871 F.2d at 842; see also Idaho, 939 F.2d at 789 (forecast of next year's traffic level is "type of determination ... best left to the Commission, which has expertise and broad authority in the abandonment area"); FCC v. National Citizens Comm. for Broadcasting, 436 U.S. 775, 814 (1978) ("complete factual support in the record for the Commission's judgment or prediction is not possible or required; a forecast of the direction in which the future public interest lies necessarily involves deductions based on the expert knowledge of the agency") (internal quotation omitted).
 
 
 4
 Petitioners predicted that the railroad could operate the line profitably with a different rate structure. The Commission disagreed. The Commission first predicted that the 52-car facility at Scobey and the truck lines that move grain to Scobey would react aggressively if confronted with a different BN rate structure. There is credible evidence in the record that the truck lines and other elevators reacted quickly and decisively to BN's prior change in rate structure. Thus, this is not a case where the line's competitors are likely to be unresponsive to BN's changes in rate structure.
 
 
 5
 The Commission further predicted that, because of the anticipated reaction of the competitors, BN would not turn a profit on this line simply by setting a different rate structure. This second prediction follows inexorably from the first: If BN could not increase its market share on this line by lowering its rates, the railroad would end up losing even more money than before.
 
 
 6
 Petitioners want us to ignore both common sense and case law and hold that the railroad, despite uncontroverted evidence that it is currently losing money, has to prove it could not make money in the future under any hypothetical rate structure. But we read Lehigh Valley Railroad Co. Abandonment, 338 I.C.C. 793 (1972), and Missouri Pacific Railroad Co. Abandonment, 307 I.C.C. 189 (1959), on which petitioners pin this argument, as requiring only that the railroad not deliberately downgrade its service, fail to provide requested service or fail to cut operating expenses. See Lehigh Valley, 338 I.C.C. at 802-04; Missouri Pacific, 307 I.C.C. at 207-08. There is no evidence in the record that BN has done any of these.
 
 Conclusion
 
 7
 We AFFIRM the decision of the Interstate Commerce Commission.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3