96 F.3d 1528
 321 U.S.App.D.C. 80
 CSX TRANSPORTATION, INC., Petitioner,
v.
SURFACE TRANSPORTATION BOARD and United States of America, Respondents,
West Virginia Rail Authority and Pardee Curtin Lumber
Company, Intervenors.
 No. 95-1513.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 11, 1996.
Decided Oct. 11, 1996.
 
 [321 U.S.App.D.C. 81] On Petition for Review of an Order of the Surface Transportation Board.
 Charles M. Rosenberger, Jacksonville, FL, argued the cause for Petitioner, with whom R. Lyle Key, Jr. was on the briefs.
 Theodore K. Kalick, Attorney, Surface Transportation Board, Washington, DC, argued the cause for respondents, with whom Anne K. Bingaman, Assistant Attorney General, United States Department of Justice, Catherine G. O'Sullivan and Andrea Limmer, Attorneys, were on the brief. Henri F. Rush, General Counsel, and Craig M. Keats, Associate General Counsel, Surface Transportation Board, were also on the brief.
 Francis G. McKenna, Special Attorney General, State of West Virginia, was on the brief for intervenors West Virginia States Rail Authority and Pardee Curtin Lumber Company.
 Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.
 Opinion for the Court filed by Chief Judge EDWARDS.
 HARRY T. EDWARDS, Chief Judge:
 
 
 1
 CSX Transportation, Inc. ("CSXT" or "petitioner"), a major railroad company, operates a rail line between Tygart Junction and Bergoo, West Virginia. In January of 1995, CSXT applied to the Interstate Commerce Commission ("ICC")[1] to abandon the rail line. On July 11, 1995, after hearings before an administrative law judge ("ALJ"), the ICC found that public convenience and necessity precluded abandonment of the rail line and denied CSXT's application. See CSX Transportation, Inc.--Abandonment--In Barbour, Randolph, Pocahontas, and Webster Counties, WV, Docket No. AB-55 (Sub-No. 500) 33-34 (ICC served July 11, 1995) (hereinafter CSXT decision of July 11). On August 10, 1995, the ICC rejected CSXT's administrative appeal of the July decision. See CSX Transportation, Inc.--Abandonment--In Barbour, Randolph, Pocahontas, and Webster Counties, WV, Docket No. AB-55 (Sub-No. 500) 4 (ICC served August 10, 1995) (hereinafter CSXT decision of August 10). In its petition for review, CSXT claims that the ICC decision finds no support in the record insofar as it declines petitioner's request to abandon the portion of the line running from Elkins to Bergoo.
 
 
 2
 We agree with petitioner that the record lacks substantial evidence to support the ICC's findings regarding the Elkins-Bergoo rail segment. At the time when petitioner sought abandonment, the segment had produced no revenue for more than a year; there were no credible projections for rail traffic over the segment in the future; and it was undisputed that continued operation of the line would force CSXT to incur substantial opportunity costs.[2] Moreover, the ICC's denial of the abandonment request in this case flies in the face of ICC precedent regarding speculative rail traffic. Finally, as was noted by Government counsel during argument before the court, the ICC gave "a promise of remedy" to petitioner if, in one year's time, no traffic materialized on the Elkins-Bergoo line. No traffic has materialized, and, in the face of this reality, Government counsel acknowledged that the court could appropriately remand the case to the agency for entry of an order granting petitioner's requested abandonment.
 
 
 3
 [321 U.S.App.D.C. 82] For these reasons, we grant the petition for review, reverse the decision of the ICC, and remand the case to the STB with instructions to grant petitioner's application to abandon the Elkins-Bergoo segment.
 
 I. BACKGROUND
 
 4
 The rail line that CSXT initially sought to abandon comprises over 122.89 miles of track and spans a mountainous region of West Virginia between Tygart Junction and Bergoo. From Tygart Junction, the line travels southeast for 28.4 miles, where it passes through Elkins, West Virginia. From Elkins, the line heads south, coming to a dead end at Bergoo.
 
 
 5
 In August of 1993, CSXT applied to the ICC for permission to abandon the Tygart-Bergoo rail line; later, after hearing projections of increased rail traffic in the coming year, CSXT withdrew the request. However, when the projected increased traffic never materialized, CSXT determined that profitability from the line was unlikely in the near future. In January of 1995, CSXT submitted a new application to abandon the Tygart-Bergoo rail line.
 
 
 6
 Upon receiving CSXT's new application, the ICC ordered an investigation by an ALJ into the proposed rail abandonment. The ALJ conducted hearings, during which protests were voiced by some local residents, shippers, and members of West Virginia's congressional delegation. Over the course of the hearings, the ALJ developed an extensive record, which included written statements and oral testimony from numerous CSXT officials and from local residents and businesspeople. One local businessman, Charles Kelly, claimed that three coal-mining companies were interested in re-opening Elkhead 1, a coal mine in Monterville, West Virginia. See Verified Statement of Charles J. Kelly (sworn to on Feb. 24, 1995), reprinted in Joint Appendix A249-52. Elkhead 1 sits close to the dead end of the rail line, near Bergoo, and it is the only potential business for the rail line between Elkins and Bergoo.
 
 
 7
 In addition to calling for a hearing, the ICC requested CSXT to submit separate financial information on the 28.4 mile Tygart-Elkins segment of the rail line. The agency clearly distinguished between the Tygart-Elkins and Elkins-Bergoo segments of the Tygart-Bergoo line, apparently because the traffic patterns were quite different on each segment of the line. See CSX Transportation, Inc.--Abandonment--In Barbour, Randolph, Pocahontas, and Webster Counties, WV, Docket No. AB-55 (Sub-No. 500) 3 (ICC served March 13, 1995) (hereinafter CSXT decision of March 13). CSXT provided separate revenue and cost information both for the Tygart-Elkins segment and for the Elkins-Bergoo segment. At the time of the ICC's request, some rail traffic existed over the Tygart-Elkins segment, but there was no business on the Elkins-Bergoo segment.
 
 
 8
 On July 11, 1995, after considering the record developed by the ALJ and financial data submitted on the line and its segments, the ICC denied CSXT's application. See CSXT decision of July 11 at 34. However, the ICC decision included a proviso that, with respect to the Elkins-Bergoo segment, if no rail traffic materialized in a year's time, the ICC would be receptive to and would expeditiously consider a new application for abandonment by CSXT. See id. at 33.
 
 
 9
 CSXT administratively appealed the ICC's decision to deny abandonment of the Elkins-Bergoo segment. The ICC rejected CSXT's appeal. See CSXT decision of August 10 at 4. CSXT now petitions for review in this court, contending that the record lacks substantial evidence to support the ICC's denial of its request to abandon the Elkins-Bergoo segment.
 
 II. ANALYSIS
 
 10
 We review the ICC's decision to ensure that it is supported by substantial evidence in the record. See 5 U.S.C. § 706(2)(E) (1994). Having reviewed the record in this case, we conclude that there is no credible evidence to support the ICC's decision to deny CSXT's abandonment of the Elkins-Bergoo segment.
 
 
 11
 It is undisputed that, although CSXT first filed an application for abandonment of the entire Tygart-Bergoo line, the ICC bifurcated [321 U.S.App.D.C. 83] the case so as to give separate consideration to the Tygart-Elkins and Elkins-Bergoo segments. Before making its decision, the ICC invited CSXT to provide separate financial data for these segments. See CSXT decision of March 13 at 4. The ICC also considered and commented on each segment separately, dividing the "Discussion and Conclusions" section of its opinion into separate headings for the "Bifurcated Segment" (the Tygart-Elkins segment) and "The Elkins-Bergoo Segment." See CSXT decision of July 11 at 30-33. The Commission ruled explicitly, "[W]e will deny the abandonment of the Elkins to Bergoo Segment...." Id. at 33. The ICC ultimately concluded that, with respect to the Elkins-Bergoo segment, CSXT should re-apply for abandonment in a year's time if no rail traffic materialized. See id. The ICC made no such proviso for the Tygart-Elkins segment. In our review of this case, we address only the ICC decision to deny abandonment of the Elkins-Bergoo segment.
 
 
 12
 In determining whether to allow the abandonment, the ICC was required to weigh the inconvenience that might be suffered by shippers and affected communities if the line were abandoned against the costs that would be incurred by the railroad and interstate commerce if the line continued in operation. See Colorado v. United States, 271 U.S. 153, 168, 46 S.Ct. 452, 455-56, 70 L.Ed. 878 (1926). The ICC found that public convenience and necessity precluded CSXT's abandonment of the Elkins-Bergoo segment, but there was no record evidence justifying this conclusion. Rather, the record indicates that the burdens that would befall CSXT in maintaining a line that drew no revenues, had no reasonable prospects for new business, and incurred considerable opportunity costs substantially outweighed any hypothesized burdens that might be suffered by shippers and the public as a result of an abandonment of the Elkins-Bergoo segment. Indeed, the agency's judgment to the contrary makes no sense in light of the record that was before it.
 
 
 13
 Everything in this case points to the conclusion that CSXT's petition to abandon the Elkins-Bergoo segment should have been granted. First, CSXT acted responsibly in addressing the matter. The company originally applied for abandonment but, after hearing projections for increased rail traffic, withdrew its application to avoid precipitous action. Not until a year later, when no new rail traffic had materialized, did CSXT resubmit an application for abandonment of the line. Second, the only business serviced by the Elkins-Bergoo rail segment was the Elkhead 1 coal mine. The mine has been closed since late 1994, and there is no real prospect of its reopening. Third, no other business that will provide revenue to CSXT exists between Elkins and Bergoo. Finally, it is undisputed that CSXT will continue to incur substantial opportunity costs absent an abandonment of the Elkins-Bergoo segment. Financial data submitted to the ICC by CSXT placed economic loss from the Elkins-Bergoo segment at $357,252 for the coming year. See CSXT decision of August 10 at 2-3. This court has held that opportunity costs are relevant to abandonment applications. See Association of Am. R.Rs. v. I.C.C., 846 F.2d 1465, 1467 (D.C.Cir.1988).
 
 
 14
 Against the weight of this record in favor of abandonment, the ICC relied on only one apparent consideration--the idle speculations of a local businessman--in rejecting CSXT's petition for abandonment. The businessman, Charles Kelly, testified that three coal-mining companies expressed some ill-defined interest in operating Elkhead 1. At oral argument before this court, when pressed on this point, Government counsel could point to no other basis for the ICC's decision, and this court can find nothing else in the record. This lack of evidence is quite telling, because Kelly's testimony is a promise of nothing, offering neither a commitment nor even a concrete proposal for the operation of Elkhead 1. His claim that there were coal-mining companies interested in the mine seems at best fanciful, especially since no such companies presented themselves to the ICC. CSXT can hardly be expected to run a business on these terms, and Kelly's statements surely do not come close to outweighing the case made by CSXT for abandonment.
 
 
 15
 [321 U.S.App.D.C. 84] The ICC's denial of the abandonment of the Elkins-Bergoo segment also flies in the face of ICC precedent. We could find no case, and counsel could point us to none, where abandonment has been denied on a similar record. Indeed, the ICC has granted abandonment even in circumstances where there has been some traffic on the line to be abandoned. For example, in New York Cent. R.R. Abandonment, 282 I.C.C. 283 (1952), the ICC approved an abandonment application even though there were shippers available and in operation. The question there was whether the shippers could offer enough business to make the line profitable. See id. at 288-90. In this case, there are no shippers along the Elkins-Bergoo segment, and the segment produces no revenue whatsoever.
 
 
 16
 Finally, it is undisputed that the ICC gave CSXT "a promise of remedy" if no rail traffic materialized on the Elkins-Bergoo segment. No rail traffic has materialized, further evidencing that CSXT's request for abandonment of the Elkins-Bergoo segment should be granted.
 
 
 17
 In short, we find that the record lacks substantial evidence to support the ICC's decision to deny CSXT's abandonment of the rail line between Elkins and Bergoo. It may be that, in granting CSXT a "promise of remedy" if no rail traffic materialized within a year, the ICC understood that there was no substantial evidence to support its decision. In any event, given the record at hand, it comes as no surprise that no rail business materialized on the Elkins-Bergoo segment in the year following the ICC's decision. Whatever else may be said about this case, it is clear that the "promise of remedy" is now due. It is also clear that CSXT should have been given a remedy when they first asked for it, so it would be unfair to require the company to return to the agency for another round of litigation.
 
 III. CONCLUSION
 
 18
 For the reasons set forth above, the petition for review is granted. The decision of the ICC is reversed, and the case is remanded to the Surface Transportation Board with instructions to grant CSXT's request to abandon the Elkins-Bergoo segment.
 
 
 
 [1]
 Effective January 1, 1996, the ICC Termination Act of 1995, Pub.L. No. 104-88, 109 Stat. 803 (1995), abolished the Interstate Commerce Commission and transferred many of its functions to a newly created Surface Transportation Board. On March 4, 1996, this court substituted the Surface Transportation Board for the Interstate Commerce Commission as respondent in this case
 
 
 [2]
 Economic or "opportunity" cost represents "the economic loss experienced by the railroad from foregoing a more profitable alternative use of its assets." See Baltimore & Ohio R.R. v. I.C.C., 826 F.2d 1125, 1126 n. 1 (D.C.Cir.1987)