In re Matter of BOSTON AND MAINE CORPORATION, Debtor.

No. 70–250–M.

United States District Court, D. Massachusetts.

Aug. 26, 1983.

Martin R. Jenkins, Asst. Atty. Gen., Office of the Attorney General, State of N.H. for the State of New Hampshire.

John T. Collins, Sherburne, Powers & Needham, Boston, Mass., for the State of New Hampshire.

Charles H. Morang, City Atty., for City of Keene, N.H.

Sidney Weinberg, Boston, Mass., for Boston and Maine Corp.

## MEMORANDUM AND ORDER

*Re Petition for Authority to Abandon Segments of Brattleboro-Keene Line*

FRANK J. MURRAY, Senior District Judge.

The Trustees of the property of the Boston and Maine Corporation ("B & M") petitioned the court for an order authorizing them, pursuant to Rule 8–512(b) of the Bankruptcy Rules, to abandon three adjoining segments of railroad lying between Brattleboro, Vermont, and Keene, New Hampshire (the "Line"). The petition came on to be heard on May 4, May 10 and May 23, 1983, after the Interstate Commerce Commission ("Commission") filed its report, pursuant to Section 1170(b) of the Bankruptcy Act [11 U.S.C. § 1170(b)], recommending the abandonment, and after notice of the time and place of the hearing to the persons, agencies, and entities specified in 11 U.S.C. § 1170(c).

At the hearing counsel for the Debtor's Trustees presented evidence in support of the petition. Counsel for the State of New Hampshire (the "State") appeared to oppose the petition, and presented evidence, and the City of Keene, New Hampshire (the "City"), appeared by its Counsel and expressed opposition to the proposed abandonment, and presented certain evidence.

The Line is approximately 36.2 miles in length between Brattleboro and Keene, and is comprised of three segments: (1) the Fort Hill Branch, approximately 11.34 miles in length, lying between mile-post S49.81 and milepost S61.15; (2) the Ashuelot Branch, approximately 21.68 miles in length, lying between milepost EN2.08 and milepost EN23.76; and (3) the Keene Yard tracks, approximately 3.10 miles in length, lying between milepost B89.10 to milepost

B92.20. The Line lies within the counties of Windham in Vermont and Cheshire in New Hampshire.

At the hearing of the petition before the court, the evidence established that the Debtor's Trustees first considered the question of abandonment of the Line, as recommended by Mr. Dustin, president and chief operating officer of the Debtor's railroad, at their meeting on September 8, 1982. Upon conclusion of this meeting, the Debtor's Trustees requested of Mr. Dustin additional information as to the public need for railroad service in the geographic area affected, and the impact of the recommended abandonment thereon. A second recommendation was submitted by Mr. Dustin, which the Trustees considered at their meeting of November 9, 1982, at which meeting they voted unanimously to proceed with the recommended abandonment of the entire Line.

The decision of the Trustees was based upon several factors, including: (1) the cost, as estimated in the studies made by the Debtor's staff at $1,764,907, of restoring the entire Line to conform with necessary minimum operating standards (Federal Railroad Administration Class I standards); (2) the expressed reluctance of the Green Mountain Railroad Corporation ("GMRC") to continue switching and other operations it performs on the Line under leases from the Debtor; (3) the probable operating losses, estimated by the Debtor's staff as prohibitive based on adjusted figures from past operations of the Line, if Debtor were obligated to resume operations of the Line upon termination of operations by GMRC pursuant to the leases; and (4) the understanding of the Trustees that the principal commercial shippers in the City of Keene had recently evinced a tendency to prefer shipping by motor truck rather than by rail.

B & M leased the Keene Yard to GMRC in 1978, and leased the Fort Hill Branch and the Ashuelot Branch to GMRC effec-tive January 1, 1982, and GMRC conducted railroad operations thereon. The leases enabled B & M to avoid further losses from rail operations. Provisions in the leases permitted termination of the entire lease, or parts of it, by either party upon 60 days' notice to the other. In September 1982 B & M was notified by GMRC that GMRC would terminate operations between Winchester, on the Ashuelot Branch, and Keene,[1] but would continue operations over the Fort Hill Branch and Ashuelot Branch from Brattleboro to milepost 5.0 at Hinsdale, New Hampshire.

Evidence presented by petitioners, and not disputed, showed a marked decline of carloads on-line in the period 1978–82. When the steady decline of carloads on-line commencing in 1978 became evident, several public meetings were held during 1980, 1981 and 1982 in communities served by the Line, which were attended by shippers, representatives of State agencies, representatives of B & M, and the executive officer of the Greater Keene Chamber of Commerce, to discuss (1) steps which might be taken to increase the volume of traffic on the Line, and (2) possible subsidizing of the cost of rehabilitating part of the Line. At one or more of the meetings B & M's representatives sounded a warning that unless the trend of declining traffic were reversed B & M would seek authorization to abandon the Line. The State Railroad Administrator at one of the meetings warned shippers that if they did not make more use of the Line they would probably lose the rail service. During the hearing the State vigorously opposed abandonment of the segment between Brattleboro and Hinsdale (hereinafter the "Brattleboro-Hinsdale Segment"). Further, the State challenged B & M's computations of the estimated cost of rehabilitation work, and presented evidence of the cost to rehabilitate the Brattleboro-Hinsdale Segment in the amount of $395,000. The State Railroad Administrator testified that under cer-

1. Upon such termination of operations by GMRC, the obligation to carry on the operations reverted to B & M.

tain conditions the State and the Ashuelot Paper Co., would subsidize the cost of the rehabilitation work needed on the Segment to the extent of $395,000, assuming a contract price not in excess of that amount to do the work would result from competitive bidding. No evidence was offered to show the probable revenue from operations, or the likely cost of operations, of the Segment.[2] Objections were raised by the State to the qualifications of those providing estimates to the petitioners of the net salvage value of the track and bridge components of the Line, and of the selling prices of land comprising the right of way, if abandonment should occur. Finally, both State and City presented evidence of probable adverse economic consequences on certain communities served by the Line, if abandonment were to be allowed.

During the three-day hearing held by the court no shipper from the Keene area appeared to protest the loss of rail service threatened by these abandonment proceedings. Only one shipper (whose base is in Hinsdale) testified in opposition to abandonment by expressing a commitment to future use of rail service over the Brattleboro-Hinsdale Segment. The present transportation operations of this shipper's business are mainly handled by motor trucks, and it appeared that abandonment of rail service at Hinsdale would *not* render the shipper's business non-competitive. No other shipper located on the Brattleboro-Hinsdale Segment appeared to give testimony relating to the transportation needs of its business or the probable effect of abandonment on its business.

From the evidence and record before the court, certain matters have been established to the court's satisfaction: (1) beginning in 1978 there has been a marked decline of carloads on-line, and nothing has been shown of the likelihood of reversal of the trend; (2) the GMRC's operation of the Brattleboro-Hinsdale Segment at present levels of carloads is not profitable even

with added cash allowances provided by B & M for loads originating or terminating in Hinsdale as an incentive to GMRC to continue operations; (3) there is the strong likelihood that B & M would sustain continuing losses resulting from declining revenues and additional labor costs should B & M be obligated to resume operations of the Brattleboro-Hinsdale Segment if GMRC elects to discontinue operations; (4) the well-planned and coordinated efforts of State officials, the Chamber of Commerce, certain shippers and other interested persons, to increase traffic on the Segment have not had the desired effect; (5) the decline in traffic on-line is probably attributable to motor truck competition; (6) the abandonment of rail service on the Brattleboro-Hinsdale Segment would likely result in adverse economic dislocation from loss of some jobs and curtailment of some factory production in communities served on the Line; and (7) a finding is not justified that there is present or foreseeable future need of rail service on the Segment sufficient to develop operating revenues to produce profits.

The State interposed no objection to abandonment of any part of the Line other than the Brattleboro-Hinsdale Segment, and contended that continuous rail service on that Segment is needed to avert adverse impact on the economy of the local region. Further, the State argues that even if GMRC elects to discontinue its operations on the Segment, it would not be consistent with the public interest to permit the abandonment, "even assuming unprofitability of the railroad segment".

In determining whether abandonment is consistent with the public interest, that is, public convenience and necessity, the approach has been to balance the needs in the communities for rail service provided by the railroad line targeted for abandonment against the inconvenience, losses or other burdens to which other needs for rail service will be subjected. Where the railroad

---

**2.** Before this petition for authority to abandon the Line was filed with the court, no proposals were made by the State to either B & M or GMRC to subsidize operations on the Line or any segment thereof.

involved is a carrier of both intrastate and interstate commerce, such as B & M, the needs of both must be weighed. This balancing of competing interests has had approval over a long period of time. In the leading case of *Colorado v. United States*, 271 U.S. 153, 168–69, 46 S.Ct. 452, 456, 70 L.Ed. 878 (1926), the Supreme Court said:

> The sole test prescribed is that abandonment be consistent with public necessity and convenience. In determining whether it is, the Commission must have regard to the needs of both intrastate and interstate commerce .... The benefit to one of the abandonment must be weighed against the inconvenience and loss to which the other will thereby be subjected. Conversely, the benefits to particular communities and commerce of continued operation must be weighed against the burden thereby imposed upon other commerce....
>
> *   *   *   *   *   *
>
> Whatever the precise nature of these conflicting needs, the determination is made upon a balancing of the respective interests—the effort being to decide what fairness to all concerned demands. In that balancing, the fact of demonstrated prejudice to interstate commerce and the absence of earnings adequate to afford reasonable compensation are, of course, relevant and may often be controlling.

The balancing approach has been preserved in the requirements of 11 U.S.C. § 1170 and 11 U.S.C. § 1165.

Upon the entire record, the further retention in service of the Brattleboro-Hinsdale Segment to handle the present and foreseeable future level of need for rail transportation would result in continuous operating losses. Generally, whenever abandonment of a railroad line is permitted it is likely that some inconvenience and probable losses to certain shippers will result. Here, abandonment will have the effect of depriv-

ing current on-line customers of rail service, unless GMRC would continue its operations between Brattleboro and Hinsdale. It appears quite clear that GMRC would not continue unprofitable operations indefinitely. If the present shippers have not heretofore taken the step, it is likely that they would soon cast eyes toward alternative means of transportation. Continuous operating losses on the Segment would impose unnecessary and undue burdens on B & M and its operations in interstate commerce, and the court finds that those burdens outweigh the prospective loss to the public and to the current on-line shippers from discontinuance of the rail service.

These undue burdens would not be ended or substantially alleviated prospectively, even if the cost of rehabilitating the Segment were to be accomplished without expense to B & M. Moreover, it is indeed doubtful, unless there is reversal of the declining trend of carloads on-line, that expenditure of $300,000 (or more) by the State at this time for the rehabilitation work on the Segment could be made without substantial opposition.[3]

Abandonment of the Line, including the Brattleboro-Hinsdale Segment, would be in the best interest of the B & M because (1) B & M would be relieved of the undue burden of continuous operating losses, including operating losses on the Segment, and (2) B & M could sell or salvage railroad property used on the Line. Either the sale of railroad properties (even at prices lower than those offered in evidence by the petitioners that was excluded) or the salvage of portions of such properties would inure to the benefit of B & M and be in its best interest.

The court is satisfied, considering the best interest of the B & M and the public interest affected, that abandonment of the Line including the Brattleboro-Hinsdale Segment is consistent with the public interest, and, therefore, the petition is hereby

---

3. 1981 authorization of the State subsidy is referred to in the report of Andrews and Clark, Exhibit D. Among the recommendations of the report are (1) that a level of 1,000 cars per year be achieved before application of any subsidy funds, and (2) that an industrial base be developed on the entire Line before an expenditure of subsidy funds.

allowed. Accordingly, it is hereby OR-DERED:

1. That B & M is authorized to abandon the railroad line approximately 36.2 miles in aggregate length, extending between Brattleboro, Vermont and Keene, New Hampshire, comprised of three segments known, respectively, as the Fort Hill Branch, approximately 11.34 miles in length, extending from milepost S49.81 to milepost S61.15, the Ashuelot Branch, approximately 21.68 miles in length, extending from milepost EN2.08 to milepost EN23.76, and the Keene Yard tracks, approximately 3.10 miles in length, extending from milepost B89.10 to milepost B92.20, all within the counties of Windham in Vermont and Cheshire in New Hampshire;

2. That B & M is authorized to utilize elsewhere on its railroad system, and to sell or otherwise dispose of, such materials as may be recovered from the abandoned Line;

3. That B & M is authorized to sell or otherwise dispose of all or any part of the land owned by the railroad that lies under or adjacent to the abandoned Line.

In view of the interest in preserving rail service over the Brattleboro-Hinsdale Segment demonstrated by the State, the Chamber of Commerce, and certain public-spirited individuals, the court stays execution of the Order allowing the abandonment of the Line, for 45 days after the date of entry of the Order, to afford opportunity for acquisition, by any or all of those interests, of the Brattleboro-Hinsdale Segment from B & M.